## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

ILA MAY SCARBROUGH,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

Case No. 14-CV-2311-DDC

## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, as amended. Plaintiff has filed a brief (Doc. 11) seeking judicial review of the Commissioner's decision. The Commissioner has filed a brief in opposition (Doc. 17) and submitted the administrative record with her Answer (Doc. 8). Plaintiff has filed a reply brief (Doc. 18), and therefore this matter is ripe for decision. Having reviewed the administrative record and the briefs of the parties, the Court reverses the decision of the Commissioner, orders that judgment be entered under the fourth sentence of 42 U.S.C. § 405(g), and remands the case to the agency for further proceedings consistent with this Order.

### I. Procedural History

On April 11, 2008, plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, alleging disability beginning November 15, 2007. (R. 79) On April

1

23, 2010, an administrative law judge ("ALJ") denied plaintiff's applications after a hearing. (R. 79-89)  But on September 13, 2010, the Appeals Council vacated the ALJ's decision and remanded plaintiff's claims for further proceedings.

A few months before the Appeals Council issued its decision, plaintiff filed additional claims for DIB and SSI.  (R. 14)  After remand, a different ALJ associated all of plaintiff's claims and, on March 28, 2012, issued a decision denying plaintiff's requests for benefits.  (R. 14-33)  The Appeals Council denied plaintiff's request for review of the ALJ's order (R. 1-4), rendering it final for purposes of judicial review under § 405(g).

## II.  Legal Standard

### A.  Standard of Review

Section 405(g) of Title 42 of the United States Code grants authority to federal courts to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited, extending only to the issues:  (a) whether substantial evidence in the record supports the factual findings; and (b) whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).  "If supported by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed."  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lax*, 489 F.3d at 1084.  It must be "more than a scintilla," but

2

it need not amount to a preponderance. *Id*.  While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they do not reweigh the evidence or substitute their judgment for the Commissioner's. *Id*. (citation and internal quotation marks omitted).  But they do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted).  When determining whether substantial evidence supports the Commissioner's decision, courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id*. (citation omitted).  "'Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) or if it really constitutes not evidence but mere conclusion.'" *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)).  But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases. *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule in *Glass*).  Some errors are harmless, requiring no remand or further consideration. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v.*

*Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.

2004).

### B.  Disability Determination

Claimants seeking DIB and SSI benefits carry the burden to show that they are disabled.

*Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general, the Social

Security Act defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disa-

bility."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (govern-

ing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental

security income)).  As summarized by the Tenth Circuit, this five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently
> engaged in substantial gainful activity.  If not, the agency proceeds to consider, at
> step two, whether a claimant has a medically severe impairment or impairments . .
> . . At step three, the ALJ considers whether a claimant's medically severe impair-
> ments are equivalent to a condition listed in the appendix of the relevant disability
> regulation.  If a claimant's impairments are not equivalent to a listed impairment,
> the ALJ must consider, at step four, whether a claimant's impairments prevent
> [him or] her from performing [his or] her past relevant work.  Even if a claimant
> is so impaired, the agency considers, at step five, whether [he or] she possesses
> the sufficient residual functional capability ["RFC"] to perform other work in the
> national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. §

404.1520(b)-(g).  The claimant has the "burden of proof on the first four steps," but the burden

shifts to the Commissioner "at step five to show that [the] claimant retained the RFC to 'perform

an alternative work activity and that this specific type of job exists in the national economy.'"

*Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d

748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point

that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799,

801 (10th Cir. 1991).

## III. Discussion

The ALJ determined that plaintiff here has the following "severe impairments": obesity,

asthma, degenerative disc disease of the lumbar spine and cervical spine, type two diabetes

mellitus, a mood disorder variously described as dysthymic disorder or major depressive

disorder, an anxiety disorder, and a partial tear of the right rotator cuff. (R. 17) But the ALJ

concluded that plaintiff "does not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. 20)

Instead, the ALJ determined that the record evidence supported a finding that plaintiff has the

RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> the claimant is able to lift and carry up to fifty pounds occasionally but only ten
> pounds frequently. The claimant can sit, stand or walk for two hours each at a
> time. However, she can only walk for two hours, stand for four hours and sit for
> six hours in an eight-hour day. The claimant does not require a cane for
> ambulation. She may frequently use her upper extremities for activities such as
> reaching, handling, fingering, pushing and pulling. Additionally, the claimant
> remains able to frequently operate foot controls with her lower extremities. The
> claimant can occasionally climb stairs, ramps, ladders and scaffolds. She is also
> able to frequently balance, stoop and kneel. However, the claimant is limited to
> occasional crouching and crawling. The claimant can tolerate occasional
> exposure to unprotected heights, moving mechanical parts, humidity/wetness and
> extreme temperature changes. The claimant can frequently operate a motor
> vehicle and frequently tolerate vibrations. Furthermore, the claimant can tolerate
> moderate exposure to fumes, odors, dust and pulmonary irritants. In addition, the
> claimant can perform simple, routine and repetitive work requiring only
> superficial and occasional contact with others in a low stress environment defined
> as requiring occasional decision[-]making and occasional changes in the work
> setting.

(R. 21-22)  The ALJ found that plaintiff is unable to perform any past relevant work.  (R. 31)  But after considering plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy" that plaintiff can perform.  (*Id.*)

Plaintiff argues that the ALJ made three errors in reaching this conclusion.  Specifically, plaintiff contends that the ALJ erred by:  (1) failing to give sufficient weight to the opinion of plaintiff's treating psychiatrist; (2) failing to support her RFC determination adequately; and (3) relying improperly on the opinion of the vocational expert to determine that sufficient jobs exist in the national economy that plaintiff can perform.  The Court addresses each argument below.

**A.  Did the ALJ Weigh the Opinion of Plaintiff's Treating Physician Properly?**

Plaintiff first argues that the ALJ failed to apply the correct legal standards when assigning weight to the medical opinion of Dr. Krishna Divadeenam, a psychiatrist who treated plaintiff.

**1.  Standard for Evaluating Medical Opinions**

An ALJ must consider all medical opinions.  *See* 20 C.F.R. § 404.1527(c).  The ALJ also must discuss the weight she assigns to such opinions.  *See id.*; § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s) including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  The regulations identify three types of "acceptable medical sources": (1) treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or have had "an ongoing treatment relationship" with the claimant; (2) nontreating sources, *i.e.*, medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, *i.e.*, medical sources who render an opinion without examining the claimant.  *See id.* § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011).  In general, the Commissioner gives more weight to opinions from examining sources than to opinions from nonexamining sources.  20 C.F.R. § 404.1527(c)(1).  And the Commissioner generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2).

The Commissioner will give the medical opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  The ALJ must consider these two factors when determining whether a treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted).  First, the ALJ must consider whether such an opinion is well-supported.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  If it is, then the ALJ must "confirm that the

opinion is consistent with other substantial evidence in the record." *Id.*  And an ALJ "may decline to give controlling weight to the opinion of a treating physician where he articulate[s] specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and internal quotation marks omitted).

The ALJ's inquiry does not end with a finding that a medical opinion deserves less than controlling weight.  *See Krauser*, 638 F.3d at 1330; *Watkins*, 350 F.3d at 1300.

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330; *accord Watkins*, 350 F.3d at 1300-01.  Unless the ALJ gives the treating source opinion controlling weight, it must evaluate the medical opinion in accordance with factors contained in the regulations.  20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *1, 3.  Those factors are

> (1) [the] length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. § 404.1527(c)(2)-(6).  After considering these factors, the ALJ must give reasons in the decision for "the weight [that the ALJ] ultimately assigns the [medical] opinion."  *Watkins*, 350 F.3d at 1301 (citation and internal quotation marks omitted).  But the ALJ need not apply a factor-by-factor analysis so long as the decision is "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham v. Astrue*, 509

F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300).  When an ALJ completely rejects an opinion of a treating source, the ALJ must state specific and legitimate reasons for the decision.  *Watkins*, 350 F.3d at 1301.

An ALJ must give a treating physician's opinion substantial weight "unless good cause is shown to disregard it."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995).  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Id.* at 290 (citation and internal quotation marks and alterations omitted).

### 2.  Analysis

The ALJ gave "little weigh[t]" to the medical opinion of plaintiff's treating psychiatrist, Dr. Krishna Divadeenam.  (R. 31)  Dr. Divadeenam treated plaintiff "on and off" for eight years.  (R. 960).  On December 29, 2009, Dr. Divadeenam wrote a letter outlining his view of plaintiff's condition.  (*Id.*)  He concluded:

> [Plaintiff] has had persistent symptoms of depression.  Symptoms in her case include frequent sadness, often easily overwhelmed, poor concentration and hopelessness.  She has attempted and failed [at] multiple attempt[s] of employment and her physical health has greatly deteriorated over the last few years.  [Plaintiff] has had periods of suicidal thoughts and overdosed in the past.  Her father died in 2002 and her mother died in 2009.  She has some history of trauma [] as a child and witnessing a man being shot in the head.  Nightmares disturb her sleep on a regular basis.
>
> She suffers from diabetes mellitus, hypertension, obstructive sleep apnea, asthma, reflux, extensive arthritis and high cholesterol.

(*Id.*)  Dr. Divadeenam noted that plaintiff "is compliant with her psychiatric treatment including making appointments and taking her medications," and that she "has no issues with substance abuse."  (*Id.*)  Nevertheless, he concluded that plaintiff's "prognosis for recovery is poor without

approval for disability[,] as she is unable to obtain and maintain employment due to her medical and psychiatric health problems." (*Id.*)

Dr. Divadeenam also completed a form that asked him to check boxes indicating whether plaintiff could perform various work-related activities.[1]  (R. 962-63)  In the section asking about the mental abilities and aptitude needed to do unskilled work, Dr. Divadeenam rated plaintiff's abilities as "good" in five categories and "fair" in six categories.  (R. 962)  But he rated her ability as "poor to none" in five categories:  maintain attention for two hour segments; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress.  (*Id.*)

Dr. Divadeenam indicated that plaintiff could not perform skilled or semiskilled work. (R. 963)  However, he stated that plaintiff had a "good" or "fair" ability to:  interact with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in an unfamiliar place; and use public transportation.  (*Id.*)  Finally, Dr. Divadeenam wrote that he anticipated that plaintiff's impairments would cause her to be absent from work more than three times per month.  (*Id.*)

The ALJ gave Dr. Divadeenam's opinion little weight because she found that it was not supported by his treatment notes and was also inconsistent with the rest of the record.  (R. 30-31)

---

[1] In her opinion, the ALJ wrote that Dr. Divadeenam's answers to the check box form "indicate[] fair and poor/none ability to function in most every functional category," but that "the form itself contains no definitions for these terms, making it difficult to assess the weight of this form."  (R. 30)  Plaintiff argues that the ALJ had a duty to recontact Dr. Divadeenam to obtain clarification about the meaning of the form and erred by failing to do so.  The Court rejects this argument.  The ALJ explicitly determined that she did not need to recontact Dr. Divadeenam because she determined that whatever the definition of the terms in the check box form, the record as a whole did not support his opinion.  Based on its own review of the record, the Court concludes that the ALJ's determination on this point was a reasonable one.

The ALJ noted that while Dr. Divadeenam concluded that plaintiff suffered from poor concentration and suicidal thoughts, his treatment notes did not support this finding.  (R. 30)  According to the ALJ, the treatment notes say that plaintiff showed normal concentration and attention even after her mother died in 2009.  (*Id.*)  And the ALJ found that plaintiff's medical records from her time as Dr. Divadeenam's patient "do not reflect suicidal ideations, homicidal narratives or other evidence of paranoia or delusions."  (*Id.*)

The ALJ also concluded that Dr. Divadeenam's opinion was inconsistent with the record as a whole.  (R. 31)  Dr. Nixon Morales began treating plaintiff after Dr. Divadeenam, and Dr. Morales' treatment notes record adequate mental functioning.  (*Id.*)  Finally, the ALJ noted that Dr. Divadeenam's opinion is inconsistent with numerous GAF scores.  These scores generally ranged between 51 and 60, indicating a moderate level of functioning.  (*Id.*)

The Court concludes that the ALJ did not err by assigning little weight to Dr. Divadeenam's opinion.  First, the ALJ rightly concluded that parts of his opinion contradict his underlying treatment notes.  For instance, in his opinion Dr. Divadeenam wrote that plaintiff had poor concentration and became overwhelmed easily.  (R. 960)  But his contemporary treatment notes do not show such limitations, even after plaintiff's mother died in 2009.  Indeed, the notes reveal that plaintiff's ability to concentrate was "grossly intact" and do not indicate that she was easily overwhelmed.  (*See* R. 734, 703, 730, 726, 971)  Also, Dr. Divadeenam's opinion asserts that plaintiff has had "suicidal thoughts" in the past.  (R. 960)  But the only evidence in the record to support this claim is a single treatment note from two years before plaintiff alleges she became disabled, more than two years before she filed her application for benefits, and four years before Dr. Divadeenam wrote his opinion.  Dr. Divadeenam repeatedly said in his treatment notes that plaintiff was not a danger to herself.  (*See* R. 706, 730, 726, 703)

The ALJ also correctly noted that Dr. Divadeenam's opinion is inconsistent with other evidence in the record. Dr. Morales began treating plaintiff after Dr. Divadeenam, and his treatment records reveal less significant limitations than Dr. Divadeenam's opinion. (*See* R. 1106 ("She was compliant, cooperative and approachable," [h]er mood appeared to be euthymic," "[a]ttention and concentration were fair."); R. 1144 (same); R. 1193-96 (same); R. 1188-90 (same)) Dr. Divadeenam's opinion also is inconsistent with opinions from: examining physician Dr. Todd Schemmel (R. 636) ("[Plaintiff] appears to possess the psychological adaptability and persistence necessary for sustained, gainful employment. . . ."); examining physician Dr. Edward Neufeld (R. 712) ("[F]rom a purely emotional and cognitive basis, [plaintiff's] depression is more chronic and low grade, rather than severe. Thus, she should be employable from a mental health perspective."); and state agency physician Dr. Stanley Golon, who reviewed the entire record (R. 1220-21) (concluding that plaintiff has only mild or moderate difficulties performing various tasks). The ALJ examined these reports and concluded that they outweighed Dr. Divadeenam's opinion. *See Goatcher*, 52 F.3d at 290. In light of all the evidence and the inconsistencies between Dr. Divadeenam's notes and his written opinion, the ALJ did not err by giving little weight to Dr. Divadeenam's opinion.

### B. Does Substantial Evidence Support the ALJ's RFC Determination?

Next, plaintiff argues that the ALJ failed to assess her RFC properly. As the Court already has outlined, the ALJ found that plaintiff has the ability to: lift and carry up to 50 pounds occasionally but only 10 pounds frequently; sit, stand, or walk for a two-hour period, but only walk for two hours, stand for four hours, and sit for six hours in an eight-hour day; frequently reach, handle, finger, push and pull, and operate foot controls; occasionally climb stairs, ramps, ladders and scaffolds; occasionally crouch and crawl; frequently balance, stoop,

and kneel; tolerate occasional exposure to unprotected heights, moving mechanical parts, humidity/wetness, and extreme temperature change; frequently tolerate vibrations and operate a motor vehicle; tolerate moderate exposure to fumes, odors, dust, and pulmonary irritants; and perform simple, routine, and repetitive work requiring only superficial and occasional contact with others in a low-stress environment requiring occasional decision-making and occasional changes in the workplace.  (R. 21-22)

Plaintiff first asserts that the ALJ erred because she "made no function-by-function assessment of [plaintiff's] ability to do physical and mental work-related activities, and she provided no explanation of how the evidence supports each of her conclusions . . . ."  Doc. 11 at 16.  The Court disagrees.  Social Security Ruling 96-8p provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).  The ALJ met this standard.  Over the course of 10 pages, the ALJ discussed plaintiff's testimony and evaluated the medical and opinion evidence in the record.  (R. 22-31)  She cited specific facts and explained the weight she gave each medical opinion as well as her reasons for doing so.  After considering all of the evidence, the ALJ concluded that the record did not support plaintiff's claim that she is disabled.  When she determined plaintiff's RFC, the ALJ properly considered the evidence before her.

Next, plaintiff argues that the ALJ erred by giving great weight to the opinion of Dr. Joseph Gaeta.  Dr. Gaeta did not examine plaintiff.  Evidence from nonexamining sources such as state agency physicians and medical experts is considered opinion evidence.  20 C.F.R. § 416.927(e).  ALJs are not bound by nonexamining source opinions but must consider them,

except for opinions about the ultimate issue of disability.  *Id.*  While the opinion of an agency physician who has never seen the claimant generally is entitled to little weight, the ALJ can accept the opinion of nonexamining physicians over that of treating physicians if the opinions of the nonexamining physicians are consistent with the evidence in the record.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Barnhill v. Astrue*, 794 F. Supp. 2d 503, 516 (D. Del. 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

The ALJ gave "great weight" to Dr. Gaeta's opinion because:  (1) he had reviewed the entire record when formulating his opinion; (2) his opinion was consistent with the medical evidence as a whole; and (3) his opinion was supported by nominal objective findings.  (R. 26) Plaintiff argues that the ALJ failed to "connect the dots" between the evidence in the record and Dr. Gaeta's opinion.  Doc. 11 at 16.  But the ALJ discussed the medical evidence in significant detail over four pages in her ruling and concluded that it was consistent with Dr. Gaeta's opinion.  (R. 23-26)  The ALJ did not err in considering Dr. Gaeta's opinion.

Finally, plaintiff argues that the ALJ erred by weighing the opinions of state agency physicians improperly.  Specifically, plaintiff takes issue with how the ALJ evaluated the opinion of Dr. C.A. Parsons.  (R. 110-13)  Plaintiff asserts that Dr. Parsons' opinion is "significantly more restrictive" than the ALJ's RFC.  Doc. 11 at 17.  The Court acknowledges that Dr. Parsons' opinion contains additional limitations that are not contained in the ALJ's RFC (*i.e.*, that plaintiff can *never* kneel, crouch, or crawl).  (R. 111)  But as the ALJ noted, even if she had adopted Dr. Parsons' opinion, it is consistent with a finding that plaintiff is capable of light and sedentary work.  (R. 27)  Thus, even if the ALJ erred by considering Dr. Parsons' opinion, plaintiff has not shown that she was harmed by this mistake.  *See Shinseki v. Sanders*, 556 U.S.

396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

The Court concludes that the ALJ did not err or, at most, committed harmless error, when she formulated plaintiff's RFC.  Accordingly, the Court rejects plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence.

### C. Did the ALJ Properly Determine that Plaintiff Could Perform Work in the National Economy?

At the final step of the disability analysis, the ALJ must determine whether sufficient jobs exist in the national economy that plaintiff can perform given her RFC.  *Wall*, 561 F.3d at 1052. To help with this analysis, the Social Security Administration has created Medical-Vocational Guidelines, which divide jobs into five categories based on physical exertion requirements of work in the national economy.  20 C.F.R. § 404.1567.  These categories are:  sedentary, light, medium, heavy, and very heavy.  *Id.*

During plaintiff's disability hearing on September 19, 2011, the ALJ posed the following question, in relevant part, to a vocational expert:

> I'd like you to assume an individual of the claimant's age, education and work experience who can lift up to 10 pounds occasionally, stand/walk for about six hours, sit up for up to six hours in an eight-hour workday with normal breaks. Occasional climbing of ramps and stairs.  No climbing of ladders, ropes or scaffolds.  Occasional balance, occasional stoop.  No kneeling, crouching, or crawling. . . .  This individual could perform simple routine repetitive tasks with occasional interaction with the public.  Could this hypothetical individual perform the claimant's past work?

(R. 67)  The vocational expert replied that plaintiff could not perform her past work but testified that she could perform other jobs in the national economy.  (*Id.*)  Specifically, the vocational expert said that plaintiff could perform two types of jobs:  (1) certain jobs in the light, unskilled job category, including office helper, shipping/receiving weigher, and photocopy machine

operator; and (2) certain jobs in the sedentary job category, including eye glass polisher, lens inserter, and ampule sealer.  (R. 67, 69)

Several months later, the ALJ issued her written order denying benefits for plaintiff.  The ALJ concluded that plaintiff's RFC permitted her to perform something less than the full range of light work.  Because plaintiff could not perform all light work, the ALJ discussed the vocational expert's testimony to determine "the extent to which [her] limitations erode the unskilled light occupational base."  (R. 32)  But the ALJ's summary in her order of the vocational expert's testimony differs from the transcript of the hearing.  Specifically, the ALJ listed three light, unskilled jobs that, according to her, the vocational expert testified that plaintiff could perform:  merchandise marker, router machine operator, and molded frame assembler.[2] For some reason, however, these three light, unskilled jobs *differ* from the jobs the vocational expert had identified at the hearing.  (*See* R. 67 (vocational expert testifying that plaintiff could perform light, unskilled jobs of office helper, shipping/receiving weigher, and photocopy machine operator))  Neither party addresses this discrepancy, and the Court has found nothing in the record to explain it.  Without another readily apparent explanation, the ALJ simply may have erred when she summarized the vocational expert's testimony.

A court reviews the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotation omitted).  The ALJ concluded that plaintiff is not disabled because sufficient jobs exist in the national economy that plaintiff can perform.  But the ALJ based this conclusion entirely on the testimony of the vocational expert, which it appears she mischaracterized.  Nothing in the record supports the

---

[2] The ALJ did not mention the three sedentary jobs that the vocational expert had testified plaintiff could perform.  (*See* R. 69)

16

ALJ's finding that plaintiff can perform the jobs of merchandise marker, router machine operator, and molded frame assembler. The vocational expert did not mention these jobs, nor did she evaluate whether someone with plaintiff's RFC could perform them. Thus, the ALJ's conclusion that sufficient jobs exist in the national economy that plaintiff can perform is not supported by substantial evidence. The Commissioner has failed to meet her burden at step five of the disability analysis. *Smith*, 61 F. App'x at 648.

Based on this error, the Court remands this case to the ALJ for further proceedings. On remand, the ALJ should evaluate whether the vocational expert's testimony at the disability hearing shows that sufficient jobs exist in the national economy that plaintiff can perform.

### IV. Conclusion

The Court reverses and remands the Commissioner's decision. The Court enters judgment under the fourth sentence of 42 U.S.C. § 405(g), reversing the Commissioner's decision and remanding the case for further proceedings consistent with this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security disability insurance benefits and supplemental security income is **REVERSED** and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case to the agency for further proceedings consistent with this order.

**IT IS SO ORDERED.**

**Dated this 11th day of August, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**